May it please the court, good morning, your honors. My name is John Mark Jennings. I appeared this morning on behalf of the appellant in this case, James J. Joseph, who is the Chapter 7 trustee for the bankruptcy estate of NREITN Entertainment Network. Your honor, given the length and complexity of the briefs in this case and the amount of information contained therein, there's only a few points that the trustee would wish to make this morning. As legal professionals and certainly as humans more broadly, we are constrained by the language that we use in interpreting the law, trying to craft law, trying to craft contracts which can fit inside that law. I would propose this morning that there are three terms which are subject to some ambiguity in this case, which when defined will result in a waiver of the right of recoupment being asserted. Those three terms are, first of all, offset. The second term is recoupment. The third term is set-off. There's been many cases which has discussed the ambiguity between these words and many cases have endeavored to attempt to clarify those words. I would propose to the panel that the term offset is indeed a verb. It is essentially the netting of funds between parties. It's used functionally in both the terms recoupment and set-off and it is the act of netting funds. If that act of netting funds arises out of a single contract or a series of transactions, then it's a recoupment. If it arises out of more than one, then it's a set-off. This equitable doctrine of recoupment is no different than the equitable doctrine of set-off but for the nature of the transaction. Certainly, if a number of rights arises out of either one of those, depending on which word seems to arise, the contract between the parties in this case, which is the contract between Dillard's and ETM Entertainment Network, contained an anti-offset provision. There's no discussion with respect to that and no difference of opinion. It said that the late payment of invoices will not entitle dealers to offset delinquent payment amounts against cash receipts from ticket sales. This is indeed exactly what occurred. Late payments were made. Those late payments gave rise to problems between these parties. What happens when ETM announces that it will not be making any future payments? At that point, is Dillard's entitled to declare the contract over? Dillard's is entitled to turn to its rights under the contract. This contract said that they had many rights, I suspect. One of the rights they did not have was the right to offset funds. Do they have the right to declare the contract over? They have the right to claim a breach. Certainly. But this contract is now in breach. Their damage is flowing from that breach, if indeed that fact that Your Honor cited is correct, which there's been no finding of fact with respect to that. But if that fact is correct, they have the rights under the contract. The right that they don't have, which is specifically stated, I don't know how much more clear that is. When I read your brief, I was looking forward to hearing you argue, because you have to understand what this case is all about, and you have to know what was done in this case. I do, Your Honor. I'm sure you do. I do, Your Honor. It's an interesting case. I tell you what, if you tried to crack it. It's a difficult case from your perspective. Certainly, Your Honor. I've lost twice now, and this is the third. Once your party breached, what authority does it have, what ability does it have to claim breach of contract by Dillard? I thought that when you breached, I thought one of the elements of breach of contract action was you performed all conditions required to be performed by you. Arizona lost the law of this contract. Arizona law says that the failure to make a payment under a contract does not necessarily give rise to a breach. Of course, it does not necessarily do so. This is a little different. It ain't a failure to make a payment. It's a failure to make lots of payments. And when called, if consul didn't exact, if ETM didn't exactly say, we ain't going to perform anymore, it sure sounded a lot like we ain't or can't perform anymore. We're not going to be performing. And, of course, it didn't perform anymore. So, assuming that it's missed payments made the other party think, gosh, I wonder if they're repudiating the contract. I think I'll ask them for assurances. And called and didn't get assurances, that sounds a lot like a breach. And once breached, why are they bound by the contract any longer? Well, first of all, the facts giving rise to that have never been decided by a finder of fact. We got past this on summary judgment, and we raised those as tribal issues. But you never put in anything that somebody said to Dillard's, oh, yeah, we're a little late and we're going to be paying. The best thing you put in suggested that you weren't going to be paying. In fact, when consul said, well, no, I didn't say exactly that, consul didn't say, no, we told them we were going to pay. Not to worry. The payment was coming. And, you know, consul couldn't have said that to him because payment wasn't coming and it couldn't be coming and it was hopeless. As you well know. That may well indeed have been the case. Well, it was hopeless. It turned out within a very short time we all saw how hopeless it was. And here we are. You're representing a trustee in bankruptcy, I think. Indeed. So they breached. Now, why is it that Dillard's, if they breached, Why is it that Dillard's, even assuming that we do this unique thing with the word offset, which which courts which courts have not been very careful about, nor have lawyers say, well, offset means means recruitment, too. It doesn't mean set off. In fact, in one brief, one can see them flipping back and forth. But never mind. Assuming that for a moment, why is Dillard's still bound by the contract after you folks breached it? Why can't it now just resort to whatever rights it has, including those of common law? Obviously, the events giving rise to the problem in this case were contemplated by these parties. They knew it was going to be a problem. They drafted it into their contract that these payments may very well become late. And indeed, they did become late. But not just late, but not forthcoming at all. It's a little different from saying they're going to be late. And I don't mean to stand here and say that they didn't have rights under this contract, and they may have rights to claim a breach and to assert their damages. I'm saying that in the contract, they agreed, they agreed that they would not offset funds. There were other reasons. Now, Arizona law, as we said, applies to this. Arizona law has its paroled evidence rule, which, like California, like the Trident Center case, is extremely permissive. We should be able to introduce extrinsic evidence with respect to what was meant by that provision. How do we get to this provision in the contract? Paroled evidence, extrinsic evidence, should be allowed to interpret this contract to determine whether or not the anti-offset provision indeed contemplated a failure to make payments at all. Because there were other parties, after all. There were other parties, i.e. the venues in this case, which were also going to be claiming money from ETM, and that was contemplated. We look to the definitions of these words, recoupment and offset, and I don't believe that there's any ambiguity in saying that set-off is also an offset. Recoupment certainly is an offset, and if you have an anti-offset provision, then one would propose that recoupment would also be wrapped up in the penumbra that is the term offset. If we look to the preference action, an even more difficult argument, if you will, Your Honor, there isn't a case, regrettably, that says that recoupment is a defense to a Chapter 7 trustee's preference action. They say many things about recoupment. They indeed use the words that recoupment involves no element of preference. But regrettably, that's never been applied to a Chapter 7 trustee's preference action under 547 of the Bankruptcy Code. The Supreme Court has told us in no specific terms that under 547C, which are the defenses to a trustee's preference action, that those are exclusive, that that's all there is, and recoupment is not there. They want to cite to an equitable document. But it's not a preference at all. Well, that is a defense. It's just not a preference at all. It's a netting of the underlying funds. And it's not a preference at all, right? They've really said that. They said that recoupment is not a preference. When you recoup, there is no preference, period. You're out of preference land. Correct? They did say that, yes, Your Honor. By way of footnote and right of recouper. But they said it. They are probably in charge. They are well above my prey, Gary. Yes, Your Honor. The argument that the trustee wishes to make in this instance is that under 547C, if we don't have a defense there and they waive the right of recoupment, it's waived for purposes of the trustee's breach of contract claim and it's waived for purposes of the trustee's 547 action. Arizona law says that an offset may be waived. That's clear. They waived it in a contract. If we're going to find that that language meant something at all, then we must find that it has to be given effect here. ETM may very well have been in breach. They may very well have said something to the effect of we can't pay you anymore. But that can't get billers outside of its contractual language. It says that in the event of that, we're not going to do a few things. And one of the things that we're not going to do is offset funds. Also, notably so, the transition agreement doesn't have any default terms in it. We don't know what constitutes a default of the transition agreement. It doesn't say, as an example, that the failure to pay constitutes a default under this. It may very well. And extrinsic evidence may come in to allow us to find that. But it doesn't say it. So we can't turn to the breach provisions of the transition agreement, the contract, and say, well, obviously they're in breach of Provision 1 or Provision 2. It's not there. I didn't know in contracts you had to have a special provision that said, you know, I agree to pay you $500 if you give me your car and you breach your duty to give me your car. But the contract doesn't say, and if you don't give me your car, you will be in breach. I didn't know you needed that in the contract. You don't. But under Arizona Parole Evidence Rule, we have the right to introduce extrinsic evidence to try to find out what that contract said. What was the agreement between the parties? Have you made a proffer of evidence on extrinsic evidence? Have you made a proffer as to what the form would take? I mean, what is it that you want to introduce here? Well, certainly I would want to get to the parties who signed this agreement, the two principals, the principal of ETM, the principal of Dillard's. What was the relationship? What was the background between this convoluted relationship that gave rise to the transition agreement to begin with? And what did they mean? What was contemplated when they said the late payment of invoices doesn't give rise to an offset? So you're talking about suggesting that the district court was in error to issue summary judgment here because what you would like to do is have the principals come in and talk about what they were thinking at the time? Well, that's one form of extrinsic evidence. Well, that's why I'm asking whether you've made a proffer of evidence to the court as to what you've got. Do you have an exchange of letters? Do you have handwritten notes? We have not made a proffer of evidence with respect to this, and I would very much like to hear the testimony of these people. It was resolved by way of summary judgment before any of that was, before the discovery was even taken. So we don't know what that extrinsic evidence is. Well, you certainly, I assume that you know what your client has. My client being the trustee, I know what he's been given. But with respect to this, to say that a breach of contract claim is resolved by a doctrine of recoupment where the contract itself has an anti-offset provision in it, and to have no evidence before the court that gives us any guidance with respect to what those parties meant, seems to be reversible error that at least gets us back to the bankruptcy court to find out. You know, I might have missed this, but did you go to the district court and say, Judge, look, there's no way you can rule on this case until we have sufficient discovery and can put in declarations from A, B, and C to show you what this contract really meant. And the judge said, no, I won't give you a continuance. And is that issue on appeal? Well, the issue on appeal is whether or not recoupment is a valid offense. We did not submit separately to the district court. The district court received briefs essentially similar to the motions for summary judgment, which argued the law. Well, then why in the world should we be thinking about things like, gee, you'd like to put in parole evidence? It seems to me that's just off the table. Well, because the doctrine of recoupment may not exist because of the contract. I believe that the doctrine of recoupment is valid. No, no, you've missed my point. I'm sorry, Judge. If one said, look, we see what the district judge has in front of it, and we think it's a recoupment situation, and you say, whoa, judges, you can't do that because we want to put in parole evidence, it seems to me this isn't the right place to make that argument. If it wasn't made to the district court, and as I.B. said, if it proper wasn't made to the district court, then we're not the ones to decide that. We just take what we've got. And if we look at it and say that's the way it looks on its face, isn't that the end of this case? What it is that we did is we, at two levels, both at the bankruptcy court and the district court, set forth those facts which we believe were in dispute. And those facts which were tribal issues of fact which warranted reversal. And so by way of that, those were certainly identified at both the bankruptcy court and the district court. Well, it's not enough to identify an issue of fact, if I recall my days in district court. It's not enough quite to identify an issue of fact. You've got to put a bunch of stuff to back it up and say there's a big issue of fact about this because if we put in all this parole evidence, you'll see X, Y, Z. Or we can't put in parole evidence because we don't have enough time. We need a continuance. But none of that happened here, I believe. Well, we did not ask for a continuance to conduct discovery. We followed the appeal through after submitting briefs and did not seek separate discovery on the bills of the district court. All right. But I don't believe that that divests this Court of the jurisdiction necessary to determine that tribal issue of facts do remain with respect to the underlying contract, simply because the availability of extrinsic evidence is warranted below that this Court could reverse. The problem, I think, Mr. Jennings, is this is a narrower record than you'd like it to be. And we have to decide whether on this narrow record the Court would justify it in an unanswered question. And the problem, at least from a third of the Court, a problem that you have with the arguments you're making, you're saying we haven't had a factual determination. We haven't. But we have a record where it's undisputed that not only had a breach occurred and so it's not a situation of one late payment. It's a question of whether one could conclude that this contract is terminated because all that is going to be done has been done. In other words, there's no more money forthcoming. And then you get into the nuances that you want us to get into. But we've got a record, I think, where it's perfectly clear that not only has there been a late payment, and that's what these people were looking to in the contract, at least, as this record reflects that that's what they were looking to, they weren't looking to a situation where we said there is no more and there will be no more. When you get to that point, you've got a different set of facts. I think you've got a different record. I think there's a lot of truth in what Your Honor says. If indeed the factual scenario came down to whether or not we're outside of the contract, didn't occur, then we have to look and the panel needs to decide if recoupment is going to be allowed to a defense under 547C. And if it is, then certainly I'm wrong and I go away. But there isn't a case that says that. There is a case, the Henry Stecker case, which decides recoupment in the context of a Chapter 7 trustee's claim, which says that they don't arise under the same transaction. Now let me answer one more point. I'm going to take two minutes, Your Honor. In 20 seconds I'd like to say that if they terminate this contract, if we're outside this contract, I proffer to the court that the single transaction provisions of recoupment might not apply. That recoupment requires the same transaction. If there is a separate agreement with respect to payment, we're outside of recoupment, it's set off in 553, it is triggered. And I'll save the balance of my time for rebuttal. Thank you, Your Honor. Thank you, Counsel. Mr. Marshall. Good morning, Your Honors. Lee Marshall for Dillard's. May it please the Court. I want to address the issue of the record first. I think as this Court recognizes on summary judgment they had an obligation to put at least four declarations to create a triable issue of fact. It's obviously not enough to merely point to issues which they think could be disputed were they to submit evidence. They did submit some declarations from ETM personnel, including the general counsel. At most, those declarations could be read to create a dispute as to what precisely was said between ETM and Dillard's in a telephone conversation. Before the contract was signed or after the brief? After the contract was signed. No record evidence, no declarations at all with respect to any type of parole evidence. Nothing with respect to that. There was no declarations proffered in which any ETM witness would have said that we were going to make payments. We told them that payments would be forthcoming. This is a contract where Dillard's was providing extensive services to ETM. They were selling the tickets. They were providing computer network services. They were providing accounting services. They didn't get paid, as the Court recognizes, for over four months. They called. Telephone calls were not returned. When they were able to get a hold of someone, no assurances were made that payments would be forthcoming. In fact, the contract was terminated on June 22nd. I believe it was on June 10th. ETM signed an agreement with Ticketmaster, which was basically to keep them afloat so that they could start transferring the customers to Ticketmaster. In the recitals of that agreement, they pretty much said, look, we're out of money. We need to do this.  At the time that Dillard's terminated, no assurances of further payments. As this Court recognizes, once you get to that point, Dillard's was perfectly well within its rights to terminate the contract and say, look, we're going to recoup the fees that are owed. Now, with respect to whether or not this is a setoff, a recoupment, an offset, I think the law is pretty clear as to what the difference is. A recoupment is netting out the debts from a single transaction. Setoff is netting out the debts from different transactions. The trustee admitted in its brief, it is undisputed, this is page 19, undisputed that the transition agreement was a single contract and was thus the same transaction. That's recoupment. No question about that. Single contract cases are pretty much the gold standard for recoupment. As the Court recognized, this does not need to be a defense to a preference when, in fact, there is no preference at all. The trustee's 547 action fails on its face because recoupment is simply not a preference. Now, let me address, while we're on the subject of the trustee's statutory causes of actions, let me address the 553 argument that was made right there at the end. 553 is a separate cause of action from 547. 547 is for preferences. 553 is for setoffs. Now, both say that the trustee may recover. They both have the language of a cause of action. 553 was not pled in the complaint. There was no motion for leave to amend the complaint. And the trustee admits in his reply brief that the bankruptcy court never specifically reached the Section 553B calculation, and it is unclear whether the bankruptcy court ruled on the merits of the 553 argument. So I would submit to this Court that there's simply nothing to review on appeal with respect to a 553 claim. Did I see somewhere there's been a separate 553 complaint filed? That is correct. That complaint is in our excerpts of record. The trustee, perhaps recognizing that their failure to actually plead a 553 cause of action failed to their arguments with respect to 553 in this case, went ahead and filed a separate 553 complaint to make sure they got it in under the statute of limitations. That action has been effectively stayed pending the outcome of this appeal. But the fact remains that the trustee recognized that they didn't plead it, and so they filed a separate adversarial complaint invoking 553. So, counsel, if that's been stayed pending this appeal, are we to decide this has been waived? If it's been waived, does that allow the second suit to go forward? What happens? Well, I would submit that I don't think that the bankruptcy court that's been continuing the hearings has any control over what this Court does, certainly. I would submit that this Court should find waiver, and then we're going to go back to the bankruptcy court, and we're probably going to be fighting over race judicata at that point. That's how I see it playing out. But even if this Court were to reach the merits of a 553 claim, this Court, in the Newberry case, said... Well, we can't reach the merits, can we? That is absolutely correct. It is our view that unequivocally you cannot reach the merits. But just to completely seal it off, if you will, this Court has already said in the Newberry case the requirements of Section 553 simply do not apply in recoupment cases. So not only can you not reach it, but it's just not applicable. So we think it's quite clear that 553 is really a red herring here. Now, with respect to the breach of contract action, I recognize the bulk of the trustees' argument and most of your questions were focused on that. I don't really have too much to add to what the Court has already said with respect to that. I think we have here a clear indication that no further payments would be made. At that point, Dillard's is not going to continue to provide services for which it's not going to get paid. It doesn't make any sense. Well within their rights to terminate the contract, and at that point they can resort to their common law remedies, including recoupment. Now, they've made an argument of waiver. The case they cite for waiver says that waiver cannot be inferred from the equivocal language. Here they're trying to argue that there's been waiver based on a clause dealing with offset when what we're talking about is recoupment. Mr. Marshall, I think you have to admire what they've done. There's no money. They need it, and they've been as skillful as they could be in order to try to get it. Your Honor, I think they've been working very hard. And they can't get it so far as you're concerned, I think. That's correct, Your Honor. What do you have to tell us? The only other thing I would tell you with that invitation for me to sit down is that if you look at the breach of contract action, even if you thought there was a waiver, there's simply no damages here. Dillard's got precisely what it was owed, no more, no less. And there's absolutely nothing to that breach of contract action. So it certainly appears there will be no further questions, so I will sit down. Thank you. Thank you, Mr. Marshall. Mr. Jennings? Some days it's more fun to be a lawyer than others. And which one of those days is this, Mr. Jennings? Well, at least we've admired your efforts. It's a good day, Your Honor. At least I'm just a third of the court. Let me address just a couple of things. 553 is not required to be an adversary proceeding under the Bankruptcy Code. Rule 7001 of the Federal Rules of Bankruptcy Procedure doesn't include 553. On this record, though, how do we reach 553? You reach 553 because the bankruptcy court should have not allowed the doctrine of recoupment. And by doing so, it should have found itself in the 553 penumbra. And 553B is the damages calculation when you get into the non-recoupment offset category. So if my last argument were held to be true, that indeed they have fallen outside of the single transaction rule by terminating this contract, proceeding on some other recovery, then you would get to 553 because that is the damages calculation. If it's not a preference, it's something else, then you get into 553. I'm well aware of the Newbery finding with respect to recoupment in 553. To get to where I'm headed, you have to call this not a recoupment. You have to do something else. And if their argument is that this is something other than recoupment because it falls outside of the contract, then that's where you get in trouble. You are able to reach it procedurally, but only by remand. With respect to the other claims, I think that they've been well—at least our position's been well set out. I appreciate the panel, the trustees' request that this be remanded back to the Bankruptcy Court for further proceedings. Thank you, Your Honor. Thank you, Mr. Jennings.
judges: Farris, Fernandez, Bybee